UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PAULA BERNAL, on behalf of herself and all persons similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>SOUTHWESTERN & PACIFIC SPECIALTY FINANCE, INC. DBA CHECK 'N GO, and Does 1 through 100 inclusive,<br><br>　　　　　　Defendants. | Case No:  C 12-05797  SBA<br><br>**ORDER**<br><br>Docket 13, 27 |

　　　　Plaintiff Paula Bernal ("Plaintiff") brings the instant action on behalf of herself and a putative class of similarly situated persons against Defendant Southwestern & Pacific Specialty Finance, Inc., dba Check 'N Go ("Defendant"), alleging that Defendant made consumer loans in violation of California Financial Code § 22000 et seq., and California Business and Professions Code § 17200 et seq.  Compl., Dkt. 1.  The parties are presently before the Court on Defendant's motion to compel arbitration and stay proceedings.  Dkt. 13.  Plaintiff opposes the motion and has filed a motion for leave to conduct discovery.  Dkt. 22.  Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby DENIES Defendant's motion to compel arbitration and stay proceedings without prejudice, and DENIES Plaintiff's motion for leave to conduct discovery without prejudice, for the reasons stated below.  The Court, in its discretion, finds these matters suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.　　BACKGROUND**

　　　　Defendant is a corporation based in Ohio and does business throughout California.  Id. ¶ 2.  Defendant offers California residents deferred deposit loans, commonly referred to

as "payday loans," and installment loans  Id. ¶ 12.  Although Defendant has "stores" in California, it offers a substantial percentage of its loans over the Internet through its website.  Id.

Plaintiff is a California resident.  Compl. ¶ 1.  On March 30, 2011, she entered into an Installment Loan Agreement ("Loan Agreement") with Defendant.  Id. ¶ 26.  The Loan Agreement provides that Plaintiff will receive a loan of $2,600 and is required to repay principal and interest in 17 installment payments from April 15, 2011 to November 25, 2011.  Id. ¶ 26.  It also provides an APR (i.e., annual percentage rate) of 219.22% and finance charges of $2,415.84.  Id.  The Loan Agreement was obtained by Plaintiff after she completed an online application on Defendant's website.  Id. ¶ 27.  Plaintiff alleges that portions of the loan application appeared as "pop- ups" on her computer monitor, and that she was "required to click on boxes to signify that she had 'signed' the agreement."  Id.  According to Plaintiff, the Loan Agreement is procedurally unconscionable and contains substantively unconscionable terms, including the amount of the finance charges and the APR.  Id. ¶ 28.  As of the date the complaint was filed, Plaintiff had paid $295 towards the amount owed under the Loan Agreement.  Id. ¶ 33.[1]

On October 15, 2012, Plaintiffs commenced the instant action in the Superior Court of California, County of Alameda, alleging claims for violation of California Financial Code § 22000 et seq., and California Business and Professions Code § 17200 et seq.  See Compl.  On November 13, 2012, Defendant removed the action to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Notice of Removal, Dkt. 1.  The parties are now before the Court on Defendant's motion to compel arbitration and stay

---

[1] Plaintiff alleges that during the Class Period, Defendant offered, originated or made Installment Loans to Class Members.  Compl. ¶ 35.  In each of those instances, Defendant allegedly used a substantially similar Loan Agreement and imposed finance charges amounting to at least 150% APR and more commonly 219% APR.  Id.  Plaintiff alleges that, in each of those instances, the Loan Agreement was an adhesion contract and was procedurally unconscionable, and that the APR of the loan made the loan substantively unconscionable.  Id.

proceedings. Dkt. 13. Plaintiff opposes the motion and has filed a motion for leave to conduct discovery. Dkt. 22.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), any party bound by an arbitration agreement that falls within the scope of the FAA may bring a petition in federal district court to compel arbitration. 9 U.S.C. § 4. In line with the "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract," courts "must place arbitration agreements on an equal footing with other contracts." AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745, (2011) (internal citations omitted). When faced with a petition to compel arbitration, the district court's role is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks omitted). If a party seeking arbitration establishes these two factors, the court must compel arbitration. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

Arbitration is a matter of contract. AT & T Techs., Inc. v. Commc'ns Workers of America, 475 U.S. 643, 648 (1986). Thus, arbitration agreements may "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 131 S.Ct. at 1746 (internal quotation marks omitted). However, even generally applicable doctrines such as duress or unconscionability cannot be applied in a way that disfavors and undermines arbitration. Id. at 1747.

## III. DISCUSSION

### A. Motion to Compel Arbitration

Defendant contends that arbitration is appropriate because, as part of Plaintiff's installment loan transaction, Plaintiff entered into a valid Arbitration Agreement with Defendant that "covers" the claims asserted in the complaint. See Def.'s Mtn. at 2.

According to Defendant, the Arbitration Agreement was "conspicuously disclosed" in the Loan Agreement, and is "clear and straightforward" and "mutual and fair." Id.

In response, Plaintiff argues that that the Arbitration Agreement is substantively and procedurally unconscionable, and that the Installment Loan Agreement submitted by Defendant in support of the instant motion was generated internally by Defendant and is not the same as the online loan application that she completed on Defendant's website. Pl.'s Opp. at 2; Bernal Decl. ¶¶ 3-4, Exh. 1. While Plaintiff does not have a copy of the loan application she completed on March 30, 2011, she "believes" that the layout and formatting of the loan application currently found on Defendant's website[2] is "substantially identical if not identical to the webpage she used to obtain the subject Loan." See Pl.'s Opp. at 3; Bernal Decl. ¶ 8. She states that "[w]hile some terms might use[] different wording than used back in 2011," she believes that the "layout and formatting, font size, etc. is . . . the same between the current webpage and the 2011 webpage used by Plaintiff." Pl.'s Mtn. at 3.

Plaintiff avers that while she "cannot say the contents of the loan agreement [she] signed are different from the printed version submitted by [Defendant], [she] can say that things that appear relatively obvious and clear on the printed version did not at all appear obvious or clear on the onscreen version she signed." Bernal Decl. ¶ 9. Specifically, Plaintiff states that the arbitration provision in the online application was located inside a box on the screen,[3] and that "[t]he onscreen version had much smaller fonts and the text was harder to read than the comparable wording in the printed agreement [submitted by Defendant]." Bernal Decl. ¶ 5. Further, Plaintiff notes that the current version of the online loan application contains a "tiny" pre-checked box on the bottom of the larger box

---

[2] Plaintiff's reference to the "current" version of the loan application refers to the loan application that was available on Defendant's website at the time she filed her opposition to the instant motion. The current version of the loan application can be found on the Defendant's website at https://www.checkngo.com/pdlApplication.aspx.

[3] Plaintiff states that that the entire text of the Arbitration Agreement is not visible unless a person uses the "scroll bar" on the side of the box containing the Arbitration Agreement to scroll down. Bernal Decl. ¶ 10.

containing the Arbitration Agreement indicating that a consumer has agreed to accept the terms of the Arbitration Agreement.[4] Pl.'s Mtn. at 4. Plaintiff "believes" that the online application she completed also contained a pre-checked box at the bottom of the Arbitration Agreement box indicating that she agreed to accept the terms of the Arbitration Agreement unless she "unchecked" the box. Bernal Decl. ¶ 12.

The first step of the Court's role under the FAA is to determine whether an enforceable agreement to arbitrate exists. Cox, 533 F.3d at 1119. When one party disputes whether an arbitration agreement applies, the FAA requires the Court to determine whether an agreement to arbitrate exists before compelling arbitration under the agreement. Sanford v. MemberWorks, Inc., 483 F.3d 956, 962 (9th Cir. 2007). Even when the agreement is covered by the FAA, courts apply state contract law to determine whether an agreement is valid. Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010).

Unconscionability is one of the "generally applicable contract defenses" which may invalidate an arbitration agreement. See Concepcion, 131 S.Ct. at 1746. The party opposing arbitration bears the burden of proving that the arbitration provision is unconscionable. Arguelles–Romero v. Superior Court, 184 Cal.App.4th 825, 836 (2010). "Unconscionability has both a procedural and substantive element." Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 114 (2000).

"Procedural unconscionability pertains to the making of the agreement; it focuses on the oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or the lack of informed choice." Ajamian v. CantorCO2e, L.P., 203 Cal.App.4th 771, 795 (2012) (emphasis added). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." Flores v. Transam. Homefirst, Inc., 93 Cal.App.4th 846, 853 (2001).

---

[4] A review of Defendant's website reveals that Plaintiff is correct. See https://www.checkngo.com/pdlApplication.aspx

The substantive element of unconscionability focuses on "overly harsh" or "one-sided" results.  Armendariz, 24 Cal.4th at 114 (quotations and citations omitted). "Substantive unconscionability centers on the terms of the agreement and whether those terms are so one-sided as to shock the conscience."  Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003) (internal quotation mark omitted).  "[M]utuality is the 'paramount' consideration when assessing substantive unconscionability."  Pokorny, 601 F.3d at 997-998.  To avoid being found substantively unconscionable, "arbitration agreements must contain at least 'a modicum of bilaterality' . . . ."  Id. at 998.

Both the procedural and substantive elements must be present to invalidate a contract for unconscionability, but they need not be present in equal parts.  Zullo v. Superior Court, 197 Cal.App.4th 477, 484 (2011) (citation omitted).  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  Armendariz, 24 Cal.4th at 114.

Here, Plaintiff argues that the Arbitration Agreement is both procedurally and substantively unconscionable.  As such, the specific layout, formatting, and contents of the loan application completed by Plaintiff on March 30, 2011 are essential to the Court's determination of whether a valid agreement to arbitrate exists.  While it is undisputed that the Arbitration Agreement was presented to Plaintiff as part of her online application for a loan, neither party has submitted a copy of Plaintiff's online loan application.  Instead, Plaintiff has submitted a copy of the current version of the loan application as it appears on Defendant's website, asserting that while she does not have a copy of her loan application, she believes that the current version of Defendant's loan application is "substantially identical in terms of the formatting and layout, font size, etc. of the online application [she] completed . . . in March 2011."  Bernal Decl. ¶ 8; Pl.'s Mtn. at 3.  Defendant, for its part, does not concede that the current version of its online loan application is the same as the version completed by Plaintiff on March 30, 2011.  Nor does Defendant contend that that

Installment Loan Agreement it submitted in support of the instant motion is the online application completed by Plaintiff on March 30, 2011.[5]

Absent a copy of Plaintiff's March 30, 2011 loan application or a stipulation from the parties regarding the specific layout, formatting, and contents of the Loan Agreement as it appeared on the loan application, the Court lacks a sufficient foundation to determine whether a valid agreement to arbitrate exists. Accordingly, because a determination that a valid agreement to arbitrate exists is a prerequisite to granting a motion to compel arbitration, Defendant's motion to compel arbitration and stay proceedings is DENIED. Defendant's motion is denied without prejudice to the filing of a motion that rectifies the deficiencies discussed above.

### B. Motion for Leave to Conduct Discovery

In the event that the Court does not "accept" Plaintiff's assertion that the layout and formatting that currently appears on Defendant's website "fairly depicts the formatting and layout as of March 2011," Plaintiff requests leave to conduct limited discovery. Pl.'s Opp. at 14-15. Specifically, Plaintiff requests leave to obtain "[t]estimony and/or documentary or electronic evidence regarding the exact layout, formatting and contents of the webpage used to apply for installment loans as of March 30, 2011." Id. at ii. However, Plaintiff states that "[t]o the extent Defendant concedes that Plaintiff's Exhibits 1 and 2 fairly depict the formatting, layout and contents of the Loan Agreement as it appeared on Plaintiff's

---

[5] A comparison of the documents submitted by the parties reveals that the Installment Loan Agreement submitted by Defendant is not similar in its layout or formatting to the online loan application printout submitted by Plaintiff. Compare Dean Decl., Exh. A with Dkt. 22, Exh. 1. A comparison of the documents also reveals that the language of the Arbitration Agreement is not identical. See id. The Court notes that the extent of the differences between the two documents with respect to the Arbitration Agreement is unclear because the online loan application printout submitted by Plaintiff only includes one paragraph of the Arbitration Agreement, while the Installment Loan Agreement submitted by Defendant contains seven numbered paragraphs. See id.

1  computer screen when she applied for and was approved to receive the loan, then discovery
2  is not necessary.[6]  Pl.'s Mtn. at 15.
3        In response, Defendant does not concede that Plaintiff's Exhibits 1 and 2 fairly
4  depict the formatting, layout and contents of the Loan Agreement as it appeared on
5  Plaintiff's computer screen in March 30, 2011.  Instead, Defendant argues, without
6  elaboration, that discovery is not appropriate because the declarations and exhibits
7  submitted by the parties "describe the circumstances surrounding the installment loan
8  obtained by Plaintiff from [it] in 2011."  Def.'s Reply at 6.  Defendant further argues that
9  discovery should be denied because Plaintiff has not identified any specific discovery that
10 she needs that would impact the Court's procedural unconscionabilty analysis.  Id.
11       The Federal Rules "govern the procedure in all civil actions and proceedings in the
12 United States district courts, except as stated in Rule 81."  Fed.R.Civ.P. 1.  Rule 81
13 provides that the Federal Rules govern judicial proceedings "relating to arbitration,"
14 "except as [the FAA] provide[s] *other procedures*."  Fed.R.Civ.P. 81(a)(6)(B) (emphasis
15 added).  Courts have determined that the discovery procedures of Rule 26 are applicable in
16 the context of actions seeking to compel arbitration under § 4 of the FAA.  See Champ v.
17 Siegel Trading Co., Inc., 55 F.3d 269, 276 (7th Cir. 1995) (in ruling on a petition to compel
18 arbitration, a district court could order discovery pursuant to Rule 26 on matters relevant to
19 the existence of an arbitration agreement); Deiulemar Compagnia Di Navigazione S.p.A. v.
20 M/V Allegra, 198 F.3d 473, 482 (4th Cir. 1999) ("Rule 81 . . . authorize[s] a district court,
21 in enforcing an arbitration agreement, to 'order discovery pursuant to [Rule 26] on matters
22 relevant to the existence of an arbitration agreement.' ").
23       Based on the record presented, the Court finds that discovery is not warranted at this
24 juncture.  In the Court's view, the parties should be able to resolve their dispute regarding
25 the layout, formatting, and contents of Plaintiff's March 30, 2011 loan application without

---

[6] Exhibit 1 is a printout of the current version of the online loan application on Defendant's website.  Bernal Decl. ¶ 8; see Dkt. 23.  Exhibit 2 is a printout of the contents of the "Arbitration Box" found on the online application screen.  Bernal Decl. ¶ 13; see Dkt. 23.

- 8 -

the need for formal discovery. Therefore, the Court orders the parties to meet and confer in good faith for the purpose of resolving this dispute. In the event the parties are unable to reach an agreement through either Defendant's production of Plaintiff's online loan application or a stipulation as to the specific layout, formatting, and contents of the application as it appeared on March 30, 2011, Plaintiff may file a renewed motion for discovery setting forth the specific limited discovery she seeks and how she intends to obtain such information.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to compel arbitration and stay proceedings is DENIED without prejudice to the filing of a renewed motion that rectifies the deficiencies identified above.

2. Plaintiff's motion for leave to conduct discovery is DENIED without prejudice to renewal after the parties meet and confer in a good faith effort to resolve the issues giving rise to the need for discovery.

3. Defendant's motion for order extending time for and staying scheduling obligations and discovery pending resolution of motion to compel arbitration and stay proceedings is DENIED without prejudice. Prior to the filing of any renewed motion for such relief, Defendant shall meet and confer in good faith with Plaintiff for the purpose of determining whether a dispute exists regarding the relief sought. If a dispute does not exist, the parties shall submit a stipulation. If the parties are unable to agree on the relief sought, Defendant may file a renewed motion.

4. This Order terminates Docket 13 and Docket 27.

IT IS SO ORDERED.

Dated: 10/8/2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge