UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PAULA BERNAL, on behalf of herself and all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHWESTERN & PACIFIC SPECIALTY FINANCE, INC. DBA CHECK 'N GO, and Does 1 through 100 inclusive,<br><br>Defendants. | Case No: C 12-05797 SBA<br><br>**ORDER GRANTING RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Docket 57 |

Paula Bernal ("Plaintiff") brings the instant action, on behalf of herself and a putative class of similarly situated persons, against Defendant Southwestern & Pacific Specialty Finance, Inc., dba Check 'N Go ("Defendant"), alleging that Defendant made consumer loans in violation of California Financial Code § 22000 et seq. and California Business and Professions Code § 17200 et seq. See Compl., Dkt. 1. The parties are presently before the Court on Defendant's renewed motion to compel arbitration and stay proceedings.[1]  Dkt. 57.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendant's motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

---

[1] The Court denied Defendant's initial motion to compel arbitration without prejudice to the filing of a renewed motion because neither party had submitted a copy of Plaintiff's online loan application, and because the parties did not agree as to the contents of the applicable arbitration agreement or how it was presented to Plaintiff.

## I. BACKGROUND

Defendant is a corporation based in Ohio that does business throughout California. Compl. ¶ 2. Defendant offers California residents deferred deposit loans, commonly referred to as "payday loans," and installment loans. Id. ¶ 12. Although Defendant has "stores" in California, it offers a substantial percentage of its loans over the Internet through its website. Id.

Plaintiff is a California resident. Compl. ¶ 1. On March 30, 2011, she entered into an Installment Loan Agreement ("Loan Agreement") with Defendant. Id. ¶ 26. The Loan Agreement provides that Plaintiff will receive a loan of $2,600 and is required to repay principal and interest in 17 installment payments from April 15, 2011 to November 25, 2011. Id. ¶ 26. It also provides an APR (i.e., annual percentage rate) of 219.22% and finance charges of $2,415.84. Id. Plaintiff alleges that portions of the loan application appeared as "pop-ups" on her computer monitor, and that she was "required to click on boxes to signify that she had 'signed' the agreement." Id. ¶ 27. According to Plaintiff, the Loan Agreement is procedurally unconscionable and contains substantively unconscionable terms, including the amount of the finance charges and the APR. Id. ¶ 28. As of the date the complaint was filed, Plaintiff had paid $295 towards the amount owed under the Loan Agreement. Id. ¶ 33.[2]

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), any party bound by an arbitration agreement that falls within the scope of the FAA may bring a petition in federal district court to compel arbitration in the manner provided for in the agreement. 9 U.S.C. § 4. The FAA requires the enforcement of an arbitration clause in a contract unless grounds exist "at

---

[2] Plaintiff alleges that during the Class Period, Defendant offered, originated or made Installment Loans to Class Members. Compl. ¶ 35. In each of those instances, Defendant allegedly used a substantially similar Loan Agreement and imposed finance charges amounting to at least 150% APR and more commonly 219% APR. Id. Plaintiff alleges that, in each of those instances, the Loan Agreement was an adhesion contract and was procedurally unconscionable, and that the APR of the loan made the loan substantively unconscionable. Id.

law or in equity for the revocation of any contract." 9 U.S.C. § 2.  When a dispute covered under an arbitration clause is brought in a suit in federal court, the court must stay the action upon application of any of the parties.  9 U.S.C. § 3.

The FAA reflects both a " 'liberal federal policy favoring arbitration agreements' and the 'fundamental principle that arbitration is a matter of contract.' "  AT & T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745 (2011) (citations omitted).  The "principal purpose" of the FAA is to ensure that private arbitration agreements are enforced according to their terms.  Id. at 1748.  An arbitration agreement governed by the FAA is presumed to be valid and enforceable.  See Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226-227 (1987).  The party seeking to avoid arbitration bears the burden of demonstrating that the claims at issue are unsuitable for arbitration.  Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91-92 (2000).

Generally, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).  At the same time, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  Given the presumption in favor of arbitration, a court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  AT & T Techs., 475 U.S. at 650.

When faced with a petition to compel arbitration, the district court's role is a discrete and narrow one.  "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.' "  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)) (emphasis added).  "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  If the

response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Chiron, 207 F.3d at 1130 (citations omitted).

The Supreme Court, however, has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, West, Inc. v. Jackson, 130 S.Ct. 2772, 2777 (2010). While arbitrability is ordinarily decided by the court, both state and federal cases hold that this issue may be referred to an arbitrator if there is "clear and unmistakable" evidence that the parties intended that the question of arbitrability be decided by an arbitrator. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-945 (1995); see also Poweragent, Inc. v. Electronic Data Sys. Corp., 358 F.3d 1187, 1191 (9th Cir. 2004); Dream Theater Inc. v. Dream Theater, 124 Cal.App.4th 547, 550-557 (2004).[3] To make this determination, courts conduct a "facial and limited" review of the contract in order to decide whether the parties "have in fact clearly and unmistakably agreed to commit the question of arbitrability to [an] arbitrator." Anderson v. Pitney Bowes, Inc., 2005 WL 1048700, at *4 (N.D. Cal. 2005) (Armstrong, J.). "The language of an arbitration agreement establishes whether the determination of arbitrability is for the court or delegated to an arbitrator." Fadal Machining Ctrs., LLC v. Compumachine, Inc., 461 F.App'x, 630, 632 (9th Cir. 2011) (citing First Options, 514 U.S. at 943). When the parties empower the arbitrator to decide arbitrability, the Court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause. See Rent–A–Center, 130 S.Ct. at 2779.

---

[3] "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state law principles that govern the formation of contracts." First Options of Chicago, 514 U.S. at 944. This is because arbitration itself "is a matter of contract." Rent–A–Center, 130 S.Ct. at 2776. Here, the parties do not dispute that California law is the relevant state law. In any event, California courts often look to federal law in deciding arbitration issues and "California law is consistent with federal law on the question of who decides disputes over arbitrability." Dream Theater, 124 Cal.App.4th at 553.

  "[W]here the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules - such as the AAA Rules - that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided by the arbitrator." Bank of America, N.A. v. Micheletti Family Partnership, 2008 WL 4571245, at *6 (N.D. Cal. 2008); Anderson, 2005 WL 1048700, at *2-4; Dream Theater, 124 Cal.App.4th at 557.  If the court finds that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is "wholly groundless." Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law) (citing Dream Theater, 124 Cal.App.4th at 553).  If the court finds that the assertion of arbitrability is not "wholly groundless," then it should stay the trial of the action pending a ruling on arbitrability by an arbitrator. Qualcomm, 466 F.3d at 1371.  If the district court finds that the assertion of arbitrability is 'wholly groundless,' then it may conclude that it is not 'satisfied' under section 3, and deny the moving party's request for a stay. Id.

## III. DISCUSSION

  Defendant moves to compel arbitration and stay proceedings pending the completion of arbitration.  Defendant contends, among other things, that the Arbitration Agreement contains a delegation clause delegating the power to decide arbitrability to an arbitrator.  In response, Plaintiff contends that the Arbitration Agreement is unenforceable because it is procedurally and substantively unconscionable.  However, as a preliminary matter, the Court must decide whether the determination of arbitrability is for the court or delegated to an arbitrator.  In making this determination, the initial inquiry is whether the Arbitration Agreement evinces a clear and unmistakable intent that the question of arbitrability is to be submitted to an arbitrator for resolution.  If the answer is yes, then the Court must determine whether the assertion of arbitrability is "wholly groundless."

///

///

### A.     Clear and Unmistakable Intent to Arbitrate

Defendant moves to compel arbitration pursuant to the Arbitration Agreement contained in the Loan Agreement. See Dean Decl., Exh. A, Dkt. 59.[4] In the section titled "Mandatory Arbitration Upon Election," the Arbitration Agreement provides as follows: "Subject to your right to reject arbitration . . . and subject to the small claims court exception . . ., you and we agree to arbitrate any Claim if the person or entity against whom a Claim is asserted elects to arbitrate the Claim. **Consequently, if the person or entity against whom a Claim is asserted elects to arbitrate the Claim, then neither [party] may file or maintain a lawsuit in any court**. . . ."[5] Id. (emphasis in original). The Arbitration Agreement defines "Claim," in part, as follows:

> *Claim* means any claim, dispute, or controversy arising from or relating to this agreement, this Transaction, any other agreement or transaction that you and we have ever entered into or completed, and any other conduct or dealing between you and us. A court or arbitrator interpreting the scope of this Arbitration Agreement should broadly construe the meaning of Claim so as to give effect to you and our intention to arbitrate any and all claims, disputes or controversies that may arise between you and us. . . .
>
> A Claim includes any dispute or controversy regarding the scope, validity, or enforceability of this Arbitration Agreement. . . .
>
> A Claim includes any statutory, tort, contractual, or equitable (*i.e.*, non-monetary) claim. . . .

---

[4] It is undisputed that the installment loan application process involves two separate arbitration agreements. See Dean Decl., Exh. A; Mantilla Decl., Exh. B. First, an applicant is presented with an arbitration agreement in the loan application. Second, if the applicant is approved for the loan, he or she is then presented with an arbitration agreement in the Loan Agreement. It is undisputed that Plaintiff did not elect to reject either of the arbitration agreements. Plaintiff, for her part, offers no authority or compelling argument demonstrating that the applicable arbitration agreement is the arbitration agreement contained in her loan application. Nor has Plaintiff shown that the contents of the respective arbitration agreements are materially different for purposes of the instant motion.

[5] In the section titled "Notice of Arbitration Agreement; Right to Reject Arbitration Agreement," the Loan Agreement states: "Before signing this Agreement, you should carefully review the Arbitration Agreement. . . . [It] provides that all Claims arising from or relating to this Agreement . . . must be resolved by binding arbitration if the person or entity against whom a Claim is asserted elects to arbitrate the Claim." Dean Decl., Exh. A. It further states that "[i]f you do not want to arbitrate all Claims as provided in the Arbitration Agreement, then you have the right to reject the Arbitration Agreement" by providing written notice at the address provided within 60 days following the date of the agreement. Id.

1  Id. (italics in original).

2  　　　In addition, the Arbitration Agreement provides that the parties "agree that both the
3  procedural and the substantive provisions of the [FAA] govern the enforcement,
4  interpretation, and performance of th[e] . . . [a]greement."  Dean Decl., Exh. A.  It further
5  provides that the parties agree that the American Arbitration Association ("AAA") will
6  administer the arbitration of claims and apply either its Consumer Arbitration Rules
7  ("Consumer Rules") or Commercial Arbitration Rules ("Commercial Rules").  Id.  The
8  Commercial Rules of the AAA state that "[t]he arbitrator shall have the power to rule on his
9  or her own jurisdiction, including any objections with respect to the existence, scope, or
10 validity of the arbitration agreement or to the arbitrability of any claim or counterclaim. . . .
11 The arbitrator shall have the power to determine the existence or validity of a contract
12 which an arbitration clause forms a part."  AAA Commercial Arbitration Rules, R-7(a).
13 While the Consumer Rules of the AAA do not have a rule comparable to Commercial Rule
14 R-7(a), Consumer Rule C-1(a) provides that "[t]he Commercial Dispute Resolution
15 Procedures and these Supplementary Procedures for Consumer–Related Disputes shall
16 apply whenever the American Arbitration Association (AAA) or its rules are used in an
17 agreement between a consumer and a business. . . ."  See AAA Consumer Arbitration
18 Rules, C-1(a).  Therefore, the Consumer Rules expressly incorporate by reference the
19 Commercial Rules, which in turn contains Rule R-7(a).  See Kimble v. Rhodes College,
20 Inc., 2011 WL 2175249, at *3 (N.D. Cal. 2011).

21 　　　The Court finds that the parties clearly and unmistakably intended that the question
22 of arbitrability be submitted to an arbitrator for resolution.  Under the plain language of the
23 Arbitration Agreement, the parties agreed to arbitrate any and all claims arising from or
24 relating to the Loan Agreement, including disputes or controversies regarding the scope,
25 validity, or enforceability of the Arbitration Agreement.  The parties also agreed that any
26 claim, dispute, or controversy arising from or relating to the Loan Agreement will be
27 arbitrated in accordance with the AAA Rules.  The language of the Arbitration Agreement
28 shows a clear and unmistakable intent to delegate the issue of arbitrability to an arbitrator.

1 Indeed, when an arbitration agreement explicitly incorporates the AAA Rules, numerous
2 courts have held that the parties clearly and unmistakably agreed that the issue of
3 arbitrability would be submitted to arbitration for resolution.  See e.g., Clarium Capital
4 Management LLC v. Choudhury, 2009 WL 331588, at *5 (N.D. Cal. 2009) (Armstrong, J.)
5 ("The incorporation of the AAA rules in the arbitration agreement is 'clear and
6 unmistakable' evidence of the parties' intent to delegate the issue of arbitrability to the
7 arbitrator."); see also Fadal Machining Ctrs., 461 Fed.Appx. at 632 (holding that the trial
8 court did not err in concluding that the incorporation of the AAA's Commercial Arbitration
9 Rules was a clear and unmistakable delegation of the issue of arbitrability to the arbitrator);
10 Fallo v. High–Tech Inst., 559 F.3d 874, 880 (8th Cir. 2009) (the parties' incorporation of
11 the AAA Rules is clear and unmistakable evidence that they intended to allow an arbitrator
12 to answer the question of arbitrability); Qualcomm, 466 F.3d at 1373 (by agreeing to
13 arbitrate under AAA rules, parties evidenced their unmistakable intent to delegate the issue
14 of determining arbitrability to an arbitrator).

15 Plaintiff, for his part, does not dispute that the Arbitration Agreement contains a
16 delegation clause.  Nor does Plaintiff challenge the validity of the delegation clause.  See
17 Pl.'s Opp. at 5.  As such, the Court must treat it as valid under § 2 of the FAA, and enforce
18 it under § 3 and § 4 of the FAA, leaving any challenge to the validity of the agreement as a
19 whole for the arbitrator.  See Rent-a-Center, 130 S.Ct. at 2779.  In other words, because
20 Plaintiff's procedural and substantive unconscionability challenges are not specific to the
21 delegation provision, the Court will not consider them.  See id. at 2779-2780.

22 **B.     Wholly Groundless**

23 Because the Court has found that the parties clearly and unmistakably intended to
24 delegate the power to decide arbitrability to an arbitrator, the remaining issue is whether
25 Defendant's assertion of arbitrability is "wholly groundless."  Qualcomm, 466 F.3d at
26 1371.  The "wholly groundless" inquiry allows the district court to prevent a party from
27 "asserting any claim at all, no matter how divorced from the parties' agreement, to force an
28 arbitration."  Id. at 1373 n. 5.  As set forth in Qualcomm, in conducting this inquiry:

> [T]he district court should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration. Because any inquiry beyond a 'wholly groundless' test would invade the province of the arbitrator, whose arbitrability judgment the parties agreed to abide by in the [agreement], the district court need not, and should not, determine whether [plaintiff's claims] are in fact arbitrable. If the assertion of arbitrability is not 'wholly groundless,' the district court should conclude that it is 'satisfied' pursuant to section 3.

Qualcomm, 466 F.3d at 1374.

Here, the Arbitration Agreement is broad. It provides that the parties agree to arbitrate "any claim, dispute, or controversy arising from or relating to [the Loan Agreement], this Transaction, any other agreement or transaction that [the parties] have entered into or completed, or any other conduct or dealing between [the parties]." Dean Decl., Exh. A. A review of the complaint reveals that Plaintiff's claims appear to arise out of or relate to the Loan Agreement. The Court therefore finds that Defendant's contention that Plaintiff's claims fall within the scope of the Arbitration Agreement is not "wholly groundless." See Qualcomm, 466 F.3d at 1374. Accordingly, Defendant's motion to compel arbitration is GRANTED. This action is STAYED pending completion of arbitration pursuant to 9 U.S.C. § 3. See Anderson, 2005 WL 1048700, at *6 (If a case is referable to arbitration, it must be stayed pending completion of arbitration.).

## IV.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.   Defendant's renewed motion to compel arbitration and stay proceedings is GRANTED. The instant action is STAYED pending the completion of arbitration.

2.   The parties are instructed to submit status reports to the Court every six (6) months, apprising the Court of the status of the arbitration proceedings. The parties are advised that the failure to submit such status reports could result in dismissal of this action.

3.   Upon completion of the arbitration proceedings, the parties shall jointly submit to the Court, within two weeks, a letter advising the Court of the outcome of the arbitration and request that the case be dismissed or that the case be reopened and a case management conference be scheduled.

4. This Order terminates Docket 57.

IT IS SO ORDERED.

Dated: 5/6/2014

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge